NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALLY A. FLOWERS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 04-1260 (JAG) |
| ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | **OPINION** |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**GREENAWAY, JR., U.S.D.J.**

## INTRODUCTION

Plaintiff Sally A. Flowers ("Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g),[1] of the Commissioner of Social Security's ("Commissioner") decision denying her application for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). Plaintiff asserts that the Commissioner's decision was not supported by substantial evidence and should therefore be reversed, or in the alternative, remanded to the Commissioner for a rehearing. For the reasons set forth below, Plaintiff's petition is granted and the Commissioner's decision is remanded for further proceedings, including re-evaluation of Plaintiff's residual functional capacity.

---

[1] This section of the Social Security Act provides that any individual may obtain a review of any final decision of the Secretary made subsequent to a hearing to which he was a party. The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g) (2000).

1

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on May 8, 2001, alleging disability as of January 1, 2001. (Tr. 19-20.)[2] The Social Security Administration ("SSA") initially denied Plaintiff's application. (Tr. 23-28.) Plaintiff filed a Request for Reconsideration of her application on November 14, 2001. (Tr. 29.) In response, the SSA affirmed the initial determination and denied the Request for Reconsideration. (Tr. 31-32.) Plaintiff subsequently requested a hearing before an Administrative Law Judge. (Tr. 35.) On October 23, 2002, the SSA conducted the hearing before Administrative Law Judge Ralph J. Muehlig (hereinafter "ALJ Muehlig"). (Tr. 247-80.) ALJ Muehlig issued his decision on January 14, 2003, and the following is a summary of his findings:

    1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 416.920(b).

    3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.[3]

    4. The claimant's allegations regarding her limitations are not totally credible.

    5. All of the medical opinions, in the record, regarding the severity of the claimant's impairments were carefully considered.

---

    [2]The Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record including any evidence used to formulate her conclusion or decision. Id. "Tr." refers to said transcript.

    [3]If the claimant's impairment(s) meets or exceeds one of the listed impairments, he will be found disabled.

2

6. The claimant retains the residual functional capacity[4] to perform a full range of light work.

7. The claimant's past relevant work as bus attendant and retail laborer did not require the performance of work-related activities precluded by her residual functional capacity.

8. The claimant's medically determinable diabetes mellitus[5] and osteoarthrosis[6] do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Act, at any time through the date of the decision.

(Tr. 17-18.) Based on the aforementioned findings, ALJ Muehlig ruled that the Plaintiff is physically able to return to her past relevant work, and as a result, is not disabled within the meaning of the Act. (Tr. 17.) ALJ Muehlig continued by holding that even if Plaintiff was incapable of performing her past relevant work, she maintained the residual functional capacity for light work, and as a result, is not disabled under Rule 202.17 of the Medical-Vocational "grid". Id. The ALJ also held that even if Plaintiff was only capable of performing sedentary work, she still would not be disabled under the Medical-Vocational guidelines. Id. In either case, ALJ Muehlig concluded the Plaintiff was not eligible for SSI payments under Sections 1602 and 1614(a)(3)(A) of the Act. (Tr. 18.)

On January 21, 2003, Plaintiff requested a review of ALJ Muehlig's decision before the

---

[4]Residual functional capacity is defined as what the claimant "can still do despite limitations." 20 C.F.R. § 404.1545(a) (2003).

[5]Diabetes mellitus is "a complex disorder of carbohydrate, fat, and protein metabolism that is primarily a result of a deficiency or complete lack of insulin secretion by the beta cells of the pancreas or resistance to insulin." Mosby's Medical, Nursing, & Allied Health Dictionary, 511 (6th ed. 2002) (herinafter "Mosby's").

[6]Osteoarthrosis is "a condition of chronic arthritis, usually mechanical, without inflammation. Id. at 1242.

3

SSA Appeals Council ("Appeals Council") on the grounds that the decision was not supported by substantial evidence. (Tr. 9.) The Appeals Council did not find any basis to grant the review, and denied the request. (Tr. 4-7.)[7]

## STATEMENT OF THE FACTS

**A. Background**

Plaintiff Sally Flowers was born on April 17, 1955 and was forty-seven-years-old on the day she testified before ALJ Muehlig. (Tr. 19.) She completed eleventh grade in high school. (Tr. 21.) Plaintiff's prior work experiences include employment as a school bus attendant, a certified home health aide, and a retail label/ticket maker. (Tr. 68-75.)

From 1986 to 1991, Plaintiff worked as a label maker in a factory warehouse. (Tr. 68.) From 1997 to 2000, she worked as a certified home health aide. (Tr. 68, 251-52.) She quit this job because her last client was "too much" for her to handle. (Tr. 252.) Beginning in 2000-2001, Ms. Flowers worked part-time as a school bus attendant. She worked approximately three hours in the morning and three hours in the afternoon, during the school week. (Tr. 253.) As of January 1, 2001, Plaintiff claimed disability and has been unemployed. (Tr. 19-20.) Plaintiff claimed her inability to work resulted from her high blood pressure, diabetes, arthritis, and bronchitis. (Tr. 37.)

---

[7]Social Security Administration regulations provide that the Appeals Council will grant a request for review where: (1) there appears to be an abuse of discretion by the Administrative Law Judge; (2) there is an error of law; (3) the Administrative Law Judge's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue which may affect the general public interest. 20 C.F.R. § 416.1470 (1987). The regulations also provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated, and review will be granted, where the Appeals Council finds that the Administrative Law Judge's action, findings, or conclusion is contrary to weight of the evidence currently on record. Id.

Plaintiff stated she was diagnosed with diabetes in 1988 but that she is not presently on insulin. (Tr. 254.) She is, however, on prescription medication for her diabetes, and testified that if her doctor believes the medication is ineffective, he may put her on insulin. Id. She is also on prescription medication, specifically Enalapril and Norvasc, to treat her hypertension. (Tr. 254-55.) Plaintiff also testified that she suffers from swelling in both of her legs because of her diabetes. (Tr. 256.)

**B. Medical Evidence**

The record indicates Plaintiff received medical attention on several occasions between 2001 and 2003.

1. Examination with Dr. Lester Nadel

On September 19, 2001, Dr. Lester Nadel, a state-appointed physician, performed a consultative examination on the Plaintiff. (Tr. 109-12.) His examination concluded that Plaintiff suffered from hypertension, arthritis in the hands and ankles, diabetes, possible diabetic neuropathy,[8] and "Charcot's joints in her ankle."[9] (Tr. 110.) Dr. Nadel stated that Plaintiff's hypertension is controlled with medication; she takes Naprosyn for her arthritis; and that her diabetes was poorly controlled. Id. Additionally, he recommended that Plaintiff undergo an orthopedic evaluation. Id. Dr. Nadel's examination also produced evidence of peripheral

---

[8] Diabetic neuropathy is "a noninflammatory disease process associated with diabetes mellitus and characterized by sensory and/or motor disturbances in the peripheral nervous system." Mosby's at 514.

[9] Charcot's joint is also referred to as neuropathic joint disease, which is "a chronic progressive degenerative disease of one or more joints, characterized by swelling, joint instability, hemorrhage, heat, and atrophic and hypertrophic changes in the bone." Id. at 1177.

5

vascular disease.[10] Id.

The doctor performed an EKG on Plaintiff, which revealed a normal sinus rhythm[11] of 77 beats per minute. Id. On the same day, Hudson County Medical Determinations conducted a chest x-ray and determined Plaintiff's CBC[12] and metabolic profiles. (Tr. 113-15.) The chest x-ray revealed nothing unusual. (Tr. 115.) Plaintiff's CBC profile reported everything normal except that her glucose level was higher than the reference range. (Tr. 113.) Plaintiff's metabolic profile reported everything normal with the exceptions of high MCV[13] and MCH[14] readings, and low platelet count. (Tr. 114.)

  2. Examination with Dr. Saleem Mahmood

On February 5, 2002, Dr. Mahmood, Plaintiff's treating physician, conducted two medical examinations on behalf of the State of New Jersey, Division of Family Development.

---

  [10]Peripheral vascular disease ("PVD") is "any abnormal condition that affects the blood vessels and lymphatic vessels, except those that supply the heart. Different kinds and degrees of PVD are characterized by a variety of signs and symptoms, such as numbness, pain, pallor, elevated blood pressure, and impaired arterial pulsations." Id. at 1319.

  [11]Sinus rhythm is "a cardiac rhythm stimulated by the sinus node. A rate of 60-100 beats per minute is normal." Id. at 1587.

  [12]CBC is the abbreviation for "complete blood count," defined as "a determination of the number of red and white blood cells per cubic millimeter of blood." Id. at 405.

  [13]MCV is the abbreviation for "mean corpuscular volume," defined as "an evaluation of the average volume of each red cell, derived from the ratio of the volume of packed red cells (the hematocrit) to the total number of red blood cells." Id. at 1061.

  [14]MCH is the abbreviation for "mean corpuscular hemoglobin," defined as "an estimate of the amount of hemoglobin in an average erythrocyte, derived from the ratio between the amount of hemoglobin and the number of erythrocytes present." Id.

(Tr. 126-37.) Dr. Mahmood diagnosed Plaintiff as having diabetes with peripheral neuropathy,[15] as well as minor hypertension. (Tr. 127.) He concluded that Plaintiff could not work, was unsuitable to participate in a volunteer or community service work program, and was unsuitable to enter into a school or vocational training program. Id. Plaintiff's physical limitations included: standing, walking, climbing, stooping, bending, and lifting. (Tr. 128.) Dr. Mahmood also concluded that Plaintiff's musculoskeletal functional classification was Class III. Id. Class III designates Plaintiff's functional capacity as "adequate to perform only little or none of the duties of usual occupation or of self care." Id. Dr. Mahmood also noted Plaintiff's disability would last one year or more. (Tr. 129.)

      3. Hospitalization at Jersey City Medical Center

Plaintiff was hospitalized at Jersey City Medical Center between February 19, 2002, and February 26, 2002. (Tr. 183-84.) The record indicates that she suffered a transient ischemic attack[16] and precerebral occlusions.[17] (Tr. 184.) On February 19, 2002, the Emergency Department examined Plaintiff's chest and concluded that there were no cardiac abnormalities. (Tr. 203.) On February 20, 2002, the Radiology/Imaging Department conducted an ultrasound of Plaintiff's heart and found "no increased flow velocity in the common and internal carotid arteries on both sides," and "no flow demonstrated in the right vertebral artery." (Tr. 200.) On

---

[15]Peripheral neuropathy is "any functional or organic disorder of the peripheral nervous system." Id. at 1318.

[16]Ischemia is a "decreased supply of oxygenated blood to a body part." Ischemic pain is characterized as "unpleasant, often excruciating pain associated with decreased blood flow caused by mechanical obstruction, constricting orthopedic casts, or insufficient blood flow that results from injury or surgical trauma." Id. at 933.

[17]An occlusion is "a blockage in a canal, vessel, or passage of the body." Id. at 1210.

7

February 21, 2002, Plaintiff underwent a computed tomography (CT)[18] scan of the head, which did not show any evidence of "infarction, hemorrhage or mass" and was determined to be within normal limits. (Tr. 201.)  On February 22, 2002, Plaintiff underwent a Persantine Stress Test[19] which indicated she had a "mild ischemia involving the anterior wall." (Tr. 202.)  On February 25, 2002, Plaintiff underwent a left heart cardiac catheterization which found the left ventricular systolic function normal, and no significant lesions in the left main coronary artery, circumflex, and right coronary artery. (Tr. 197.)  On February 25, 2002, Dr. Ameen, the cardiologist who administered the catheterization, concluded Plaintiff had an "essentially nonobstrusive disease" that "should have no import."  Id.  Dr. Ameen noted, however, that Plaintiff is "at risk for future coronary events."  Id.

    4. Examination with Doctor Ronald Bagner

On November 26, 2002, Dr. Bagner of the Division of Disability Determination Services, conducted a second consultative examination of Plaintiff. (Tr. 234-40.)  Dr. Bagner found "no motor or sensory abnormality in the upper extremities." (Tr. 235.)  As for the lower extremities, Dr. Bagner found Plaintiff to have minimal movement of the left foot and left ankle.  Id.  His impression was that Plaintiff had a fractured left ankle and degenerative arthritis.  Id.  Dr. Bagner noted that Plaintiff could move short distances indoors without her cane; however, the cane would be required to keep her balance while traveling longer distances outdoors. (Tr. 235.)

---

[18] Computed tomography is "a radiographic technique that produces an image of a detailed cross section of tissue."  Through analysis of this cross section, "[t]umor masses, infractions, bone displacement, and accumulations of fluid may be detected."  Id. at 408.

[19] A Persantine Stress Test is a chemically induced cardiological stress test.  Id. at 1323, 1640.

Dr. Bagner also completed a Medical Source Statement of Ability to do Work-Related Activities for Plaintiff. (Tr. 237-40.) He determined that Plaintiff could frequently lift and/or carry twenty pounds; stand or walk at least two hours a day; never climb or crawl; and occasionally balance, kneel, crouch, and stoop. (Tr. 237-38.) On the other hand, Dr. Bagner asserted that Plaintiff did not have any exertional limitations on her sitting abilities, nor did she have any manipulative, visual, or communicative limitations. (Tr. 238, 240.)

5. Dr. Saleem Mahmood's Medical Assessment of Ability to do Work-Related Activities

In response to Dr. Bagner's analysis, Dr. Mahmood also completed a Medical Assessment of Ability to do Work-Related Activities for Plaintiff. (Tr. 243-44.) He found Plaintiff's diabetic neuropathy and high blood-sugar limited her ability to lift and/or carry more than ten pounds, and restricted her ability to stand or walk to no more than two hours in an eight-hour workday and no more than one hour without interruption. Id. Dr. Mahmood also found Plaintiff's sitting not affected by her impairment. Id.

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3) (1999); see also Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); and Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more

9

than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

**B. Statutory Standard**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5) (2000). To qualify for SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381 (2000). A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2000). See also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (2000). See also Nance v. Barnhard, 194 F. Supp. 2d 302, 318 (D.Del. 2002).

Finally, while subjective complaints of pain are considered, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A) (2000). An impairment only qualifies as disabling if it "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §

423(d)(3)(A) (2000).

**C. The Five-Step Evaluation Process and the Burden of Proof**

The Commissioner determines whether the claimant is disabled, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520 (2003). At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[20] 20 C.F.R. § 404.1520(b) (2003). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id. See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c) (2003). An impairment is severe if it "significantly limits [claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairments with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Regulations No. 4. 20 C.F.R. § 404.1520(d) (2003). If the claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

---

[20] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 (2003).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work.[21] 20 C.F.R. § 404.1520(e) (2003). See Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994). If the claimant is unable to resume his past work, and his condition is deemed "severe" yet not listed, the evaluation moves to the final step.

At the final step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1) (2003). If the ALJ finds a significant number of jobs that claimant can perform, claimant will be found not disabled. Id.

**D. ALJ Muehlig's Findings**

ALJ Muehlig performed the five-step evaluation and concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. 13-18.) He found Plaintiff satisfied the first step of the evaluation process because she did not perform any substantial gainful activity, at least since her SSI application date, May 8, 2001. (Tr. 15.) At step two, ALJ Muehlig determined Plaintiff's impairments involving diabetes mellitus and osteoarthrosis were severe. Id.

ALJ Muehlig proceeded to step three, concluding that Plaintiff's ailments were not severe enough to meet or equal the severity of the impairments listed in Appendix 1, Subpart P to Regulations No. 4. Id. He found Plaintiff's claim of total disability unfounded because the objective medical evidence "could not reasonably produce the alleged subjective complaints." Id. ALJ Muehlig relied on Dr. Nadel's examination reporting Plaintiff's hypertension was under

---

[21] See infra text accompanying note 25.

12

control and that she was in no acute distress. Id. ALJ Muehlig also cited Dr. Bagner's examination indicating Plaintiff had no difficulty sitting; was capable of standing for at least two hours in an eight-hour workday; and could lift and/or carry up to twenty pounds. Id. Further, ALJ Muehlig observed that Plaintiff testified she could work part-time as a bus attendant even with her conditions. (Tr. 16.) ALJ Muehlig concluded that, although Plaintiff's impairments limit her capacity to perform certain work, the evidence established she has "the residual functional capacity to perform the exertional demands of a wide range of light work." Id.

ALJ Muehlig continued the analysis by determining that Plaintiff had the residual functional capacity to perform past relevant work. (Tr. 17.) Specifically, ALJ Muehlig found that in her former jobs as a bus attendant and retail laborer, Plaintiff performed sedentary to light work. Id. Specifically, she was not required to lift ten pounds, nor sit/stand for more than six hours in an eight-hour workday. Id. As a result, her current impairments did not preclude her from engaging in her past relevant work. Id.

Despite finding Plaintiff capable of performing her past relevant work, ALJ Muehlig analyzed the fifth step of the evaluation process. Id. ALJ Muehlig considered Plaintiff's age, vocational background, and RFC to conclude that even if she could not return to her past relevant work, she still would not be disabled under the Medical-Vocational guidelines. Id.

ALJ Muehlig's five-part evaluation determined Plaintiff Sally Flowers had the residual functional capacity to perform her past relevant work, and as a result, was not disabled within the meaning of the Act.

## **ANALYSIS**

Plaintiff contends ALJ Muehlig's determinations should be reversed or remanded because

13

they were not supported by substantial evidence and were legally erroneous by failing to follow the Social Security Rulings ("SSR").[22] (Pl.'s Mem. of Law at 12.) Plaintiff argues: 1) ALJ Muehlig's decision finding that Ms. Flowers has the RFC to perform light work was not supported by substantial evidence and that the decision was legally erroneous for failing to follow SSR 96-8p[23] requirements; 2) ALJ Muehlig's decision finding Ms. Flowers capable of performing her past relevant work was erroneous for not following SSR 82-62[24] and failing to summon a vocational expert; 3) ALJ Muehlig's decision finding Ms. Flowers not disabled, pursuant to the Medical-Vocational Guidelines, was erroneous because she has significant non-exertional limitations that preclude application of the guidelines; 4) ALJ Muehlig's decision to reject Ms. Flowers' credibility was not supported by substantial evidence; 5) ALJ Muehlig's decision that Ms. Flowers' impairments were not disabling under the listings is reversible error because the ALJ failed to fully explain the decision; and 6) good cause exists to remand the case for a rehearing.

---

[22]The Social Security Rulings are published "in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations." Availability of Information and Records to the Public, 20 C.F.R. § 402.35(b)(1) (2000).

[23]Social Security Ruling 96-8p states the SSA's policies and interpretations regarding the assessment of RFC in initial claims for disability benefits under Titles II and XVI of the Social Security Act. The ruling clarifies the term "RFC" and discusses the elements considered in the assessment. Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, (S.S.A.).

[24]Social Security Ruling 82-62 "state[s] the policy and explain[s] the procedures for determining a disability claimant's capacity to do past relevant work (PRW) as set forth in the regulations, and to clarify the provisions so that they will be consistently applied." Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, In General, SSR 82-62, 1982 WL 31386, (S.S.A.).

A. The ALJ did not have Substantial Evidence Supporting his Finding that Ms. Flowers had the Residual Functional Capacity for Light Work

Plaintiff contends ALJ Muehlig erred by finding that Plaintiff has the RFC for light work and by failing to follow the requirements of SSR 96-8p. (Pl.'s Mem. of Law at 13.) RFC is defined as the most an individual can still do on a regular and continuing basis,[25] despite the physical and mental limitations caused by his or her impairment. Fargnoli v. Halter, 247 F.3d 34, 40 (3d Cir. 2001) (citation omitted). SSR 96-8p instructs that RFC can only be expressed in terms of exertional levels of work, such as "light work", after an ALJ initially identifies the "individual's functional limitations or restrictions and assess[es] his or her work related abilities on a function by function basis."[26] SSR 96-8p at 1. The ALJ is required to provide a clear and satisfactory explanation of the basis on which the RFC assessment rests. Fargnoli, 247 F.3d at 41 (citation omitted).

The RFC for "light work" involves the ability to lift and carry up to ten pounds frequently, and up to twenty pounds occasionally. 20 C.F.R. § 416.967(b) (1980). Further, "even though the weight lifted may be very little, a job is in this category when it requires a good

---

[25] A "regular and continuing basis" means for 8 hours a day, for 5 days a week. SSR 96-8p at 2. However, "[t]he ability to work for 8 hours a day, for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, . . . , constitutes past relevant work." SSR 96-8p at 8 n.2.

[26] Physical functions include: sitting, standing, walking, lifting, carrying, pushing, pulling, and other manipulative or postural functions. Mental functions include: understanding, remembering, and carrying out instructions, and responding to supervision, co-workers, and work pressures. Other impairments affecting functional ability include: skin impairments, epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions. 20 C.F.R. § 416.945 (b), (c), (d) (2003).

15

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id.

Plaintiff specifically claims that ALJ Muehlig did not conduct a function by function analysis of Plaintiff's physical and mental abilities. (Pl.'s Mem. of Law at 16.) ALJ Muehlig's decision, however, did consider the medical evidence indicating Plaintiff's ability to sit, stand, walk, lift, and carry. (Tr. 14-15.) ALJ Muehlig referred to the medical evidence submitted by Dr. Bagner and Dr. Mahmood that Plaintiff did not have any exertional limitations on her sitting abilities. (Tr. 15.) ALJ Muehlig referred to the medical evidence submitted by Dr. Bagner and Dr. Mahmood that Plaintiff could stand or walk for at least two hours in an eight-hour workday. (Tr. 14-15.) ALJ Muehlig also referred to Dr. Bagner's medical opinion that Plaintiff was limited to lifting and carrying no more than twenty pounds, but had no limitations on her manipulative abilities. (Tr. 15.) ALJ Muehlig did not conduct a function by function analysis of Plaintiff's mental functions; however, the record does not indicate any impairments of Plaintiff's mental functions.

Plaintiff's ability to lift and carry up to twenty pounds occasionally and ten pounds frequently, to stand or walk for up to two hours in an eight-hour workday, and to sit for an unlimited time might be consistent with the RFC requirement for sedentary work, but is inconsistent with the requirements for light work. SSR 83-10 explains that the primary difference between sedentary and light work is that the latter requires a "good deal of walking or standing." Titles II and XVI: Determining Capability to Do Other Work – The Medical Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 (S.S.A.) at 5. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-

hour workday." Id. at 6. Since the record indicates Plaintiff is limited to standing or walking for a maximum of two hours in an eight-hour workday, this Court finds that substantial evidence does not exist to support ALJ Muehlig's finding that Plaintiff had the RFC to perform light work. Further, the government concedes that Plaintiff would not be able to return to her past relevant work which requires more than sedentary exertion. (Def.'s Mem. of Law at 14 n.6.)

Plaintiff raised several other arguments in her brief; however, because this Court is remanding the case for further proceedings, it is unnecessary to reach those arguments as they are moot until a proper RFC analysis is conducted.

## CONCLUSION

For the reasons stated above, this Court finds that substantial evidence does not exist to support ALJ Muehlig's decision denying SSI Benefits. Thus, the decision is remanded for further proceedings in accordance with this opinion.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: April 27, 2005